JAMES D. COLE II, as Father and Next Friend of Jessica L. Cole, a Minor, *et al.*, Plaintiffs-Appellants, v. THE CITY OF EAST PEORIA, Defendant-Appellee.

Third District   No. 3—89—0643

Opinion filed May 21, 1990.—Rehearing denied June 27, 1990.

Christopher P. Ryan, of Strodel, Kingery & Durree, Associates, of Peoria, for appellants.

Nathan R. Miller, of Miller, Hall & Triggs, of Peoria, for appellee.

JUSTICE GREEN delivered the opinion of the court:

■■ On April 27, 1988, plaintiff James D. Cole II brought suit in the circuit court of Tazewell County against defendant City of East Peoria (City) seeking damages (1) on behalf of his minor daughter Jessica L. Cole for injuries she received; and (2) on his own behalf for medical expenses he paid as a result of those injuries. On October 3, 1989, the circuit court granted the defendant's motion for summary judgment as to plaintiffs' second-amended complaint. Plaintiffs have appealed. Summary judgment may be granted only when the pleadings and other documents before the court show no genuine issue exists as to any material fact which could prevent the movant from being entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) Such is not the case here. Accordingly, we reverse and remand for further proceedings.

The second-amended complaint's essential allegations were that (1) the minor was injured on April 13, 1988, when she was riding her bicycle on the edge of Springfield Road in the City, and the tire of her bicycle fell through a storm sewer grate with openings parallel to the edge of the road; (2) the City had a duty to maintain the road surfaces and sewer grates in a reasonably safe condition for the use of the public; (3) the City was negligent in (a) failing to maintain the sewer grate in a safe condition for bicycles to pass over it, (b) permitting sewer grates to be installed with bars that ran parallel to the curb in an area where members of the public rode bicycles, and (c) failing to replace the sewer grates which ran parallel to the roadway with grates which were "bicycle safe"; and (4) the minor's injuries resulted from the negligent and careless acts or omissions by defendant.

The second-amended complaint also alleged (1) the City had a duty to correct or modify any improvements made by the City which constituted a danger to the public; (2) the City created and renewed striping on the roadway four feet from the edge of the roadway in a highly populated area which did not have sidewalks or other areas designated for pedestrians; (3) the City had actual knowledge through its employees that the four-foot zone at the edge of the roadway was actively used by pedestrians and bicyclists; (4) the City was negligent as previously described and for failing to modify or replace the roadway striping to make the area safe for members of the public while riding bicycles in the area.

The question of the propriety of the summary judgment turns upon the operation of three provisions of article III of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1987, ch. 85, par. 3—101 *et seq.*).

Section 3—102(a) of the Act states:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its *property in a reasonably safe condition for the use in the exercise of ordinary care* of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a).

Section 3—103(a) of the Act states that with regard to the adoption of a plan or design of construction of an improvement to public property, a local public entity is generally not liable. That section states, however, that a local public entity is liable "if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe." (Ill. Rev. Stat. 1987, ch. 85, par. 3—103(a).) Section 3—105(a) of the Act grants local public entities immunity from liability for "injury caused by the effect of weather conditions as such on the use of streets." (Ill. Rev. Stat. 1987, ch. 85, par. 3—105(a).) Sections 3—105(b) and (c) of the Act then provide:

"(b) Without implied limitation, neither a local public entity nor a public employee is liable for any injury caused by the failure of a local public entity or a public employee to upgrade any *existing* street, highway, alley, sidewalk or other public way or place, or the ways adjoining any of the foregoing, or the signals, signs, markings, traffic or pedestrian control devices, equipment or structures on or near such street, highway, alley, sidewalk or other public way or place, or the ways adjoining any of the foregoing from the standards, if any, which *existed at the time of the original dedication to, or acquisition of, the right of way of such street, highway, alley, sidewalk or other public way* or place, or the ways adjoining any of the foregoing, by *the first local public entity to acquire the property* or right of way, to standards which are or may be applicable or are imposed by any government or other person or organization between the time of such dedication and the time of such injury.

(c) Nothing in this Section shall relieve the local public en-

tity of the duty to exercise ordinary care in the maintenance of its property as set forth in Section 3—102." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 85, pars. 3—105(b), (c).

The documents before the court at the time summary judgment was entered undisputedly showed that (1) the minor was injured in the manner alleged in the second-amended complaint; (2) the road and sewer grate over which Jessica was riding when she was injured were part of a paving improvement project started in 1964 and completed in 1966; (3) the type of sewer grate used at that time was recommended in the plans and specifications for the project by the Illinois Department of Transportation; (4) the improvement project was a joint effort of the City and Tazewell County; (5) by agreement entered into in 1965, the City agreed to maintain the portions of the road involved; (6) on the side of the road where the bicycle was being ridden, white stripes had been painted four feet from the curb in 1984; (7) except for the painting of the stripes, the area where the injury occurred was in the same condition as it was at the completion of the improvement; and (8) since sometime in the 1970's, the proper standard for sewer grates required they have some sort of crossbars or bars at an angle such that a bicycle wheel, when ridden over them, would be unlikely to fall through the grates.

The circuit court's decision to grant summary judgment to the City was based on a theory that section 3—105(b) of the Act, which concerns immunity granted local public entities in regard to failure to upgrade existing facilities and structures, relieved the City of any liability arising from the injuries to the minor. The City maintains this rule was correct because (1) the grating conformed to standards applicable when installed in the mid-1960's; and (2) under the provisions of section 3—105(b), the City had no duty to upgrade the grating to meet the higher standards existing at the time of the injury to the minor. We conclude the analysis by the circuit court and the City incorrectly interpreted section 3—105(b) of the Act to be concerned with upgrading of facilities from standards existing when construction takes place, when actually section 3—105 is concerned with upgrading facilities on property dedicated to or acquired by a local governmental entity from the standards existing at the time of dedication or acquisition.

■ Section 3—105(b) of the Act states "neither a local public entity nor a public employee is liable for any injury caused by the failure *** to upgrade any *existing* street *** from the standards *** which *existed* at the time of the *original dedication to, or acquisition of, the right of way *** by the first local public entity to acquire the prop-*

*erty or right of way,* to standards *** applicable or are imposed *** *between the time of such dedication and the time of such injury."* (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 85, par. 3—105(b).) The language used clearly indicates the immunity granted concerns the upgrading of streets, *et cetera,* existing at the time of dedication of the street, *et cetera,* to public use or acquisition of the street by the first public entity to standards existing at the time of injury. The statutory provision is not keyed, as the City contends, to standards existing when an improvement is made to an existing roadway. Here, there is no evidence as to how or when the roadway was acquired by the first local entity or as to what appropriate standards were at that time.

If, as the City maintains, section 3—105(b) is keyed to the time an improvement is made to an existing street, then it would conflict with and repeal a substantial part of section 3—103(a) of the Act, which relieves a local public entity of liability as to defects of design but does not extend that immunity when "after the execution of such plan or design it appears from its use that it has created a condition that *** is not reasonably safe." (Ill. Rev. Stat. 1987, ch. 85, par. 3—103(a).) The only legislative history to section 3—105 arises from a question asked on the floor of the House of Representatives concerning the effect of weather conditions in relation to the immunity granted by section 3—105. (84th Ill. Gen. Assem., House Proceedings, June 30, 1986, at 14.) This question obviously involved section 3—105(a), which concerns weather conditions.

■ In the absence of other explanation and in review of the wording of section 3—105(b) of the Act, we are persuaded the purpose of that subsection is to relieve local public entities from responsibility for upgrading streets and related facilities, particularly those in subdivisions dedicated by the subdivider when, at the time of the dedication or other acquisition, the streets and facilities meet the then existing standards. In areas of rapid growth, local public entities would be taking on a very substantial burden if they were required to upgrade all of the facilities described in section 3—105(b) every time the standard for those facilities rises. The public entity to which property is dedicated or by which property is acquired cannot receive any immunity for design defects as to facilities acquired under section 3—103(a) of the Act, which only applies to "construction of, or an improvement to public property." Ill. Rev. Stat. 1987, ch. 85, par. 3—103(a).

As section 3—105(b) is not applicable here, the immunity which the City can claim must arise from sections 3—102(a) or 3—103(a) of the Act. Under section 3—102(a), the City had no immunity from a

duty to maintain its property in a reasonably safe condition and to exercise ordinary care for people using the property in a foreseeable manner as long as it had actual or constructive notice of a dangerous condition for a reasonable length of time to correct the condition. Under section 3—103(a) of the Act, the City has immunity for the plan or design of the sewer grating, because the record shows the then Illinois Department of Public Works approved the design at the time of the construction project. However, under section 3—103(a), the City does not have immunity, if after the sewer grating was put in, "it [appeared] from its use that [the design] has created a condition that it is not reasonably safe." Ill. Rev. Stat. 1987, ch. 85, par. 3—103(a).

The documents properly before the court at the time of entry of summary judgment showed evidence existed that (1) since at least 1979, the City knew of the danger of the type of grates used and had replaced grates which were broken or damaged with those containing safety features; (2) the area of the street where the minor's injuries occurred had an extended white line four feet from the curb on the side of the grate; (3) the area between the white line and the nearest curb was being used extensively by bicyclists and pedestrians; and (4) prior to the injury to the minor, the City had notice that another bicyclist had been injured when a wheel of a bicycle ridden by that person had fallen through a similar grate.

Citing *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 523 N.E.2d 594, the City maintains the Act does not create duties upon a local public entity or its employees but merely provides for immunity under conditions where liability would result at common law. The City concedes that section 3—102(a) recites the common law duty of a local public entity in regard to maintenance, but indicates that duty is the only duty upon a local public entity, and that the provision of section 3—103(a), that a local public entity has liability "if after the execution of such plan or design it appears from its use that it has created a condition that *** is not reasonably safe" (Ill. Rev. Stat. 1987, ch. 85, par. 3—103(a)), neither creates a duty nor recites one which is not covered by section 3—102(a). (See *Swett,* 169 Ill. App. 3d at 95, 523 N.E.2d at 606.) We need not decide whether that is correct because we conclude that even if plaintiff must prove a cause of action under section 3—102(a) of the Act, a sufficient showing was made that a factual question exists in that regard.

■ The necessary factual question of liability is raised here by evidence that (1) the City ordered a white line painted a distance from the curb (four feet), indicating an intention the area be used by others than those driving automobiles; (2) the City became aware the area

was being used by many bicyclists; (3) the City became aware that at least one person had been injured locally when a bicycle tire was caught between similar grates; and (4) the City had become aware that the type of grates used did not meet then existing standards and replaced parallel grates when they were damaged. Thus, evidence was produced that the City both intended and permitted cyclists to use the four-foot strip; it was foreseeable that the use would continue; the condition was unsafe; and the City had a reasonable time to remedy the condition of the grate, all as required by section 3—102(a) in order to negate immunity. In addition, the evidence could be taken to indicate the execution of the plan for the construction in the 1960's and the use of the street had created an unsafe condition as described by section 3—103(a) as creating liability.

Accordingly, summary judgment in favor of the City should not have been entered. We reverse and remand to the circuit court of Tazewell County for further proceedings.

Reversed and remanded.

KNECHT and STEIGMANN, JJ., concur.