(No. 87-CC-3604— )

DENNIS KELLY, a minor by SUZANNE E. KELLY, his mother and next friend, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 9, 1998.*

SHELDON HODES & ASSOC. (DAVID M. SCHRAUTH, of Counsel), for Claimant.

JAMES E. RYAN, Attorney General (MARINA POPOVIC, Assistant Attorney General, of counsel), for Respondent.

OPINION

JANN, J.

This matter comes before this Court on Claimant's complaint against the State of Illinois, Department of Transportation seeking recovery for Claimant's damages allegedly resulting from Respondent's negligent maintenance of the roadway. The following facts were adduced at hearing and from the record:

During the pendency of this cause discovery was interrupted and numerous continuances were granted for consideration of a motion to dismiss, motion for summary judgment and motion for leave to file affirmative defenses. Trial was held on May 24, 1995, before Commissioner Elizabeth Rochford at which time additional time was allowed the parties for the taking and submission of evidence depositions. Claimant's trial brief was received some 18 months later. Respondent also filed a post-trial brief.

On June 9, 1986, Claimant, 16-year-old Dennis Kelly, and a friend were riding their bicycles northbound on Arlington Heights Road between Route 83 and Algonquin Road. Prior to the Kennedy Expressway, Claimant was traveling on a pathway that ran alongside Arlington Heights Road. As Claimant approached the Kennedy Expressway underpass, he discovered that rocks covered the pathway preventing further travel. Claimant exited the pathway and continued northbound in the roadway. As Claimant began to accelerate he checked traffic over his shoulder and moved closer to the curb as he saw traffic approaching from behind. As Claimant looked back to the north he saw that a sewer grating was sunken. He testified that he did not have the time to react, and his bicycle tire dropped into the sewer grate. Photo exhibit number 6 shows that the sewer grate was several inches below the street level.

Claimant testified that he was thrown forward and sustained injuries to his face, mouth and ribs. Four photographic exhibits demonstrate his facial injuries. Following the accident Claimant was transported to Northwest Community Hospital where he was treated in the emergency room. Claimant received ten stitches on his upper

left cheek near his eyelid. A slight scar remains near Claimant's left eye and his cheek healed completely.

Claimant also suffered a tooth fracture to his upper front tooth that required removal of four old caps; two gold posts and a bridge were applied. Claimant testified that his left eyetooth was pushed up higher than it had been and that he was unable to complete all the dental work as proposed by the doctor due to financial constraints.

Claimant suffered bruising to his rib area; the discomfort lasted about one week.

Claimant's mother, Suzanne Kelly, also testified that following the incident Claimant complained of a headache and soreness and difficulty breathing from his bruised ribs. In addition to the obvious cuts and scratches and swelling to Claimant's face, she observed him having difficulty moving around and noticed that his teeth were not in the same alignment. Mrs. Kelly observed Claimant's injuries began to heal in the next two weeks.

The total of doctor and medical bills introduced was $1,305.30.

Claimants submitted the evidence deposition of Dr. Robert B. Malek, D.D.S. (See evidence deposition of Dr. Robert B. Malek dated November 20, 1995.) Dr. Malek first treated Claimant on June 19, 1986. His examination revealed that one tooth was intruded, four others were displaced, four temporary crowns required replacement and a tooth was fractured under the gum line. He opined that the injuries were the result of a trauma sustained in the bicycle fall. Dr. Malek formulated a treatment plan which included crowning of fractured teeth, and extraction and replacement with a fixed bridge. He further planned to refer Claimant to an orthodontist for extrusion of the intruded tooth and a possible crown.

During two visits Dr. Malek prepared the tooth to accept post and cores, a three-unit bridge and a crown. An extraction was performed and the bridge and crowns were permanently bonded.

The cost of Dr. Malek's services was $95 on June 19, 1986, $1,885 on September 15, 1986, and $130 on October 25, 1986, for a total of $2,111.

Claimant did not receive any of the orthodontic treatment prescribed. However, Dr. Malek testified that the reasonable expectation of cost for the services would be $5,130.

The Respondent produced their departmental report which concluded that Illinois Department of Transportation was responsible for the maintenance of the roadway and their investigation revealed no prior accidents reported at the subject location.

Respondent produced the sworn affidavit of Joseph J. Kostur, safety and claims manager for IDOT. He testified that the area in question was the maintenance responsibility of IDOT but stated that the area was not intended for bicycle travel or traffic. He cited the Illinois Vehicle Code, chapter 95½, article XV, section 11—1505, requiring bicyclists to travel upon the paved portion of roadway only. Kostur further cited Illinois Revised Statutes, chapter 121, article 2, par. 2—214 and asserted that the duty of IDOT to maintain the section of highway is owed to "vehicular" traffic only. The witness concluded that IDOT does not owe a duty to the Claimant cyclist.

Respondent produced Andrew H. Tudor, an expert engineer for evidence deposition. (See evidence deposition of Andrew H. Tudor, June 22, 1995). Tudor testified that on February 24, 1993, he conducted an inspection and investigation of the incident site. He described a five-

lane concrete street with a curb and a bar sewer grate 23 inches long and 13 inches wide located on the curb apron at street level. The sewer grate consists of four bar slats approximately one and three-eighths inches apart from each other. The bars are parallel to each other and the street, designed for hydraulic efficiency.

Tudor described the traffic pattern as very aggressive and testified that this particular type of grating is preferred in this type of area because they don't "plug up" as easily and they pass much more water more quickly. He noted that efficient disposal of the water is particularly important where, as here, cars are traveling at high rates of speed.

Tudor cited portions of the American Association of State Highway and Transportation Officials "Roadside Design Guide." The authority provides that drainage structures provide hydraulic efficiency while creating a minimum vehicle hazard. In regard to bar orientation the Design Guide directs that special precautions should be taken to assure that bicycle and/or motorcycle tires will not fall through the openings when inlets are placed in urban areas.

Tudor testified that the subject area is hazardous to bicycle traffic and identified a footpath about 100 feet away as an alternative travel path. However, Tudor also acknowledged that his investigation was conducted in the winter months nearly seven years after the incident. He further acknowledged that he did not know the condition of the area at the time of the incident in June, 1986.

## The Law

The State owes a duty to all users to maintain its roadways in a reasonably safe manner for motorists. That duty also applies to bicyclists and riders of motorcycles.

The State's duty to the public is to use reasonable, ordinary care to maintain its roads. (*Walter v. State* (1989), 42 Ill. Ct. Cl. 2, 4.) The Court has repeatedly ruled that in order to recover Claimant must prove by a preponderance of the evidence that a dangerous condition existed, that Respondent knew of the condition and that the condition proximately caused the incident. *Tour Loukis v. State* (1995), 47 Ill. Ct. Cl. 155, 157-8; *Scarzone v. State* (1990), 43 Ill. Ct. Cl. 201.

The State must have either actual or constructive notice of the defect. (*Immordino and Cartage v. State* (1995), 47 Ill. Ct. Cl. 78, 80.) To establish constructive notice it must be shown that the road defect was substantial enough and existed for such a length of time that reasonable persons would conclude that immediate repairs or warning signs were necessary. (*Immordino and Cartage v. State* at 80.) Each and every case involving constructive notice must be decided on its own particular facts. *Stills v. State* (1989), 41 Ill. Ct. Cl. 60, 62.

In the factually similar case of *Schneider v. State*, 47 Ill. Ct. Cl. 268, Claimant's bicycle struck a sewer grate as she attempted to avoid a passing vehicle. The bicycle tire lodged in the sewer grate causing Claimant to flip over the handle bars causing her to suffer facial and teeth injuries. The Court rejected Claimant's assertion that notice is automatic because the parallel grate is open and obvious. The claim was denied for lack of notice.

In *Cole v. City of East Peoria* (3rd Dist.), 201 Ill. App. 3d 756, 559 N.E.2d 769, the Appellate Court found constructive notice where, among other factors, the area was used extensively by bicyclists, another bicyclist had been injured when his wheel had fallen through a similar grate and where the grates had been broken or damaged

and had been replaced with new grates containing safety features. *Cole*, 201 Ill. App. 3d at 761; 559 N.E.2d at 773.

In this case Claimant was riding on a footpath adjacent to the highway. Claimant moved his bike to the roadway when he was unable to proceed any further on the obstructed foot path and continued riding. As Claimant turned to check for traffic the front tire of his bicycle fell into the sewer grate and he was thrown from his bicycle.

The evidence established that the Respondent owned and maintained the highway in question. It has further been determined that the Respondent owes a duty to bicyclists legally traveling upon the roadway. Claimant's complaint is based upon failure to maintain the grating in question. No direct evidence indicates that the grate was, in fact, defective due to damage or age or was not in compliance with applicable IDOT standards. The "Design Guide" referenced by Respondent's witness, Andrew Tutor, and relied upon in Claimant's argument was not proved to be controlling of the maintenance of the grate in question. Claimant stated the grate appeared "sunken" about three inches. We lack evidence as to whether this depression was designed or occurred through wear and tear. The photos introduced are not dispositive of this issue. No evidence was produced which would have mandated replacement of the grate by IDOT in the course of normal maintenance of the roadway.

Claimant did not produce any evidence to establish that Respondent had actual notice of the danger. Further, the evidence presented does not support a finding of constructive notice. There was no evidence to establish that this busy highway was regularly frequented by bicyclists or posed a danger to them. The fact that the parallel grate is open and obvious does not automatically create notice to the Respondent of a dangerous condition.

The Claimant's failure to establish either actual or constructive notice of the dangerous condition precludes recovery in his matter. This claim is hereby denied.