JON P. BOUB, Plaintiff-Appellant and Cross-Appellee, v. THE TOWNSHIP OF WAYNE *et al.*, Defendants-Appellees and Cross-Appellants (Karl Fry, Du Page County Engineer of Highways, Defendant).

Second District   No. 2—96—1249

Opinion filed September 9, 1997.

714

Richard J. Hickey, Thomas E. Patterson, and Janice C. Breen, all of Hickey, Driscoll, Kurfirst, Patterson & Melia, of Chicago, for appellant.

Jay S. Judge, Edward F. Dutton, and Kristine A. Karlin, all of Judge, James & Dutton, Ltd., of Park Ridge, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Jon P. Boub, appeals from an order of the circuit court of Du Page County which granted summary judgment in favor of defendants, the Township of Wayne and John Ryvold, Wayne Township highway commissioner. Defendant Karl Fry was voluntarily dismissed by plaintiff and is not a party to the appeal. Plaintiff contends that the trial court erred when it ruled that, under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/1—101 *et seq.* (West 1996)), defendants owed no duty to plaintiff and/or were immunized from any liability that might arise from their alleged conduct.

Plaintiff's third amended complaint alleged that on September 8, 1992, plaintiff rode a bicycle onto a one-lane bridge on St. Charles Road in Wayne Township; defendants knew that bicyclists used the bridge; the bridge surface previously consisted of wooden planks with asphalt between the planks; because vandals often removed the planks, defendants had begun a construction project to install steel plates on the bridge on top of the planks; as part of the project, defendants removed the asphalt from between the planks and left the bridge in that condition until the project was completed several days later; the wheel of the bicycle plaintiff was riding caught in a groove between the planks created by the removal of the asphalt; and, as a result, plaintiff lost control of the bicycle and was thrown over the handlebars onto the railing and support structure of the bridge suffering severe injuries.

Counts I and IV of the plaintiff's third amended complaint

sounded in negligence and wilful and wanton misconduct, respectively, and alleged that defendants violated a duty imposed on them by section 3—102(a) of the Act (745 ILCS 10/3—102(a) (West 1996)) to maintain the bridge in a reasonably safe condition for plaintiff's use. Counts II and V of plaintiff's third amended complaint sounded in negligence and wilful and wanton misconduct, respectively, and alleged that section 3—103 of the Act (745 ILCS 10/3—103 (West 1996)) did not immunize defendants' conduct regarding the bridge project. Counts III and VI of plaintiff's third amended complaint sounded in negligence and wilful and wanton misconduct, respectively, and alleged that defendants violated a duty that arose under certain provisions of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/1—100 *et seq.* (West 1996)) when they failed to provide signs warning of the bridge condition or warning that the road was closed.

The trial court entered an order granting defendants' motion for summary judgment as to all six counts of plaintiff's third amended complaint. In its order, the trial court stated that defendants were entitled to summary judgment on the following grounds:

"(a) The plaintiff, a bicyclist on a township road and bridge, was not an intended and permitted user of that bridge; therefore, no duty was owed to plaintiff under Section 3—102 of the Tort Immunity Act;

(b) Section 3—103 of the Tort Immunity Act does not impose a property-related tort duty and, even if it did, Section 3—103 can have no application in this case because the bridge repair project was not completed at the time of the occurrence; and

(c) Pursuant to Section 3—104 of the Tort Immunity Act, the defendants are absolutely immune from liability for any failure to provide traffic control devices, signs, signals, warnings, barriers or barricades."

Plaintiff's timely appeal followed. Defendants subsequently filed a cross-appeal from an order that denied their motion to dismiss plaintiff's first amended complaint.

■ Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1996). In all cases involving summary judgment, a reviewing court conducts a *de novo* review of the evidence in the record. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995).

On appeal, plaintiff contests only the granting of summary judgment as to the negligence counts of his third amended complaint,

counts I, II, and III. Plaintiff first contends that the trial court erred when, in relation to count I, the court determined that a bicyclist was not an intended and permitted user of the road and bridge and that defendants therefore did not owe plaintiff a duty under section 3—102 of the Act.

■ Section 3—102(a) of the Act provides, in relevant part, as follows:

> "[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ***." 745 ILCS 10/3—102(a) (West 1996).

The Act does not impose any new duties on local government entities or their employees; rather, the Act simply restates and codifies common-law principles. *Wagner v. City of Chicago,* 166 Ill. 2d 144, 150 (1995). Section 3—102(a) of the Act therefore codifies a local governmental entity's general duty at common law to maintain its property in a reasonably safe condition. *Wagner,* 166 Ill. 2d at 150. However, the duty is not absolute and extends only to persons whom the entity *"intended* and permitted to use the property." (Emphasis added.) 745 ILCS 10/3—102(a) (West 1996); see *Sisk v. Williamson County,* 167 Ill. 2d 343, 347 (1995).

In this case, defendants do not dispute that plaintiff was a "permitted" user of the road and bridge. Rather, defendants contend that plaintiff was not an "intended" user as required by section 3—102(a). Thus, the first issue before us is whether plaintiff was an "intended" user of the road and bridge. If plaintiff was an "intended" user of the road and bridge, then under section 3—102(a) defendants owed plaintiff a duty to maintain the bridge in a reasonably safe condition for the use of bicycles.

In plaintiff's view, a bicyclist is an intended user of a public road or bridge. In support of his position, plaintiff primarily relies on certain sections of the Vehicle Code and certain policies of the Illinois Department of Transportation. Plaintiff also notes that the Illinois Secretary of State publishes an official pamphlet setting forth rules of the road for bicycles.

More specifically, plaintiff argues that certain sections of the Vehicle Code show that the legislature explicitly regards bicyclists as intended users of streets, roads, and highways. Among the sections of the Vehicle Code plaintiff relies on are section 11—1502, which provides that "[e]very person riding a bicycle upon a highway shall be granted all of the rights and shall be subject to all of the duties

718

applicable to the driver of a vehicle by this Code" (625 ILCS 5/11—1502 (West 1996)); sections 11—1505, 11—1505.1, and 11—1510, which establish parameters for persons operating bicycles on public roads such as a requirement that bicycles traveling on a roadway at less than the normal speed of traffic must ride as close to the right-hand curb or edge of the road as possible (625 ILCS 5/11—1505 (West 1996)); and section 11—1509, which provides that, under certain circumstances, a uniformed officer may stop a bicyclist and inspect the bicycle for safety and other required equipment (625 ILCS 5/11—1509 (West 1996)).

As to the policies of the Illinois Department of Transportation (Department), plaintiff first posits that the Department's policy is that all new highways, except those where bicyclists are legally prohibited, should be designed and constructed under the assumption that they will be used by bicyclists. Plaintiff also states that the Department's policies require that highway projects provide adequate accommodations for bicycle travel when the route encompasses unique access across a natural or manmade barrier such as a bridge over a river.

Defendants respond that bicyclists are, at most, permitted users of the road and bridge, but are not "intended and permitted" users as required by section 3—102(a) of the Act. Defendants take the position that the road and bridge were "intended" for use by motor vehicles only. Although bicyclists are permitted users, defendants disclaim any burden to design and construct the road and bridge in such a way as to be reasonably free from defects that might present a special danger to bicyclists, such as narrow grooves, ruts, loose gravel, et cetera. Defendants rely on certain sections of the Vehicle Code and the Illinois Highway Code (Highway Code) (605 ILCS 5/2—101 et seq. (West 1996)) that distinguish between bicycles and vehicles.

More specifically, defendants point to the following definitions found in the Vehicle Code:

"§ 1—106. Bicycle. Every device propelled by human power upon which any person may ride, having two tandem wheels except scooters and similar devices." 625 ILCS 5/1—106 (West 1996).

"§ 1—217. Vehicle. Every device, in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power, devices used exclusively upon stationary rails or tracks and snowmobiles as defined in the Snowmobile Registration and Safety Act." 625 ILCS 5/1—217 (West 1996).

"§ 1—126. Highway. The entire width between the boundary lines of every way publicly maintained when any part thereof is

open to the use of the public for purposes of vehicular travel." 625 ILCS 5/1—126 (West 1996).

"§ 1—179. Roadway. That portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of the berm or shoulder." 625 ILCS 5/1—179 (West 1996).

"§ 1—201. Street. The entire width between boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." 625 ILCS 5/1—201 (West 1996).

Defendants also cite section 2—202 of the Highway Code, which provides, in relevant part:

"Highway—any public way for vehicular travel ***. The term 'highway' includes rights of way, bridges, drainage structures, signs, guard rails, protective structures and all other structures and appurtenances necessary or convenient for vehicular traffic." 605 ILCS 5/2—202 (West 1996).

Defendants contend that the cited definitions explicitly distinguish a "bicycle" from a "vehicle." Defendants further contend that the cited definitions show that highways, roadways, and streets, including the subject road and bridge, are "intended" for use by vehicles but not bicycles. Based on the cited definitions, defendants argue that bicyclists were not intended users of the subject road and bridge under section 3—102(a) of the Act and therefore defendants did not have a duty to maintain the road and bridge in a reasonably safe condition for plaintiff's particular use.

■ Illinois case law has clearly established that, under section 3—102(a) of the Act, vehicles, as defined by the Vehicle Code, are intended users of public streets, roadways, and highways and that, with narrow exceptions, pedestrians are generally not intended users of public streets, roadways, and highways. See, *e.g.*, *Sisk*, 167 Ill. 2d at 349; *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155 (1995); *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417 (1992) (and cases cited therein). Recognizing that the legislature has established a clear public policy to immunize government from the financial burdens of preventing injuries that occur as a result of unintended uses of roadways, our supreme court has stated:

"We are mindful that the costs of making all rural country roadways reasonably safe for pedestrian use may place an extreme financial burden on small rural municipalities with limited resources. It is unreasonable to expect government entities to make all their country roads reasonably safe for pedestrians ***." *Sisk*, 167 Ill. 2d at 352.

However, we are not aware of any case that has definitively determined whether bicyclists are intended users of streets,

roadways, and highways under section 3—102(a). Neither party cites a case on point. Our research has revealed an Illinois case which held that, under section 3—102(a), bicyclists were intended and permitted users of a four-foot strip in a road that was demarcated by striping on the roadway for use by bicyclists. *Cole v. City of East Peoria*, 201 Ill. App. 3d 756, 762 (1990). However, in the present case there is no such striping or demarcated lane for bicycle use. Therefore, *Cole* is not controlling here.

In the absence of a case on point, our supreme court's analysis in *Wojdyla*, *Vaughn*, and *Sisk* guides us in resolving this issue. We realize that those cases involved pedestrians and not bicyclists. We also realize that bicyclists are not the same as pedestrians. See *Bekele v. Ngo*, 236 Ill. App. 3d 330, 332 (1992). Nonetheless, we conclude that the principles established in those cases are applicable here.

In *Wojdyla*, plaintiff's decedent, a pedestrian, was struck and killed by a car when he attempted to cross a highway in a city between two intersections at a point about one-half mile from the nearest painted crosswalk. *Wojdyla*, 148 Ill. 2d at 420. In *Vaughn*, the plaintiff, a pedestrian, was injured when she fell after stepping in a hole in a city street while crossing the street mid-block, outside the crosswalks. *Vaughn*, 166 Ill. 2d at 157. In *Sisk*, the plaintiff alleged that he was injured when his car struck a concrete bridge, which crossed a creek on a rural road; he stepped out of the car to examine it for damage; and, because of weeds that obscured the edge of the roadway, he fell from the bridge to the creek below and was injured. *Sisk*, 167 Ill. 2d at 346. In each of these cases, the court addressed the question of whether, under section 3—102(a) of the Act, the plaintiff was an intended and permitted user of the road in question.

In *Wojdyla*, the plaintiff argued that his decedent was an intended user of the highway because he was crossing the highway to get to his car, which was parked on the other side. *Wojdyla*, 148 Ill. 2d at 425. The court rejected the plaintiff's argument on the ground that the intent of the user was not the proper determinant of whether he was an intended user under section 3—102(a). The court then stated:

> "To determine the intended use of the property involved here, we need look no further than the property itself. The roads are paved, marked and regulated by traffic signs and signals for the benefit of automobiles. Parking lanes are set out according to painted blocks on the pavement, signs or meters on the sidewalk or parkway, or painted markings on the curb. Pedestrian walkways are designated by painted crosswalks by design, and by intersections by custom. These are the indications of intended use.

That pedestrians may be permitted to cross the street mid-block does not mean they should have unfettered access to cross the street at whatever time and under whatever circumstances they should so choose. Marked or unmarked crosswalks are intended for the protection of pedestrians crossing streets, and municipalities are charged with liability for those areas. Those areas do not, however, include a highway in mid-block." *Wojdyla*, 148 Ill. 2d at 426.

In both *Vaughn* and *Sisk*, the court cited and followed the rule stated in *Wojdyla* that a court should look to the property itself to determine its intended use. *Vaughn*, 166 Ill. 2d at 160; *Sisk*, 167 Ill. 2d at 351. In *Sisk*, the court also noted that there were no manifestations such as crosswalks or walkways to indicate that the defendant, a rural county, intended pedestrians to walk on its country roads. *Sisk*, 167 Ill. 2d at 351. The court then stated:

"We believe that the inference to be drawn from these facts, if any, is that municipalities do not intend that pedestrians walk on rural country roads. Although it may become necessary at times for pedestrians to walk on country roads, such use is not a manifestation of the local municipality's intent that pedestrians walk on its country roads or an undertaking by the municipality to make country roads free from defects that might injure pedestrians." *Sisk*, 167 Ill. 2d at 352.

We further note that in both *Sisk*, 167 Ill. 2d at 350-51, and *Wojdyla*, 148 Ill. 2d at 423, the supreme court discarded as outmoded its earlier position in *Molway v. City of Chicago*, 239 Ill. 486 (1909), that a city would owe a duty of reasonable care to persons riding *bicycles* on city streets, explaining that *Molway* was decided before the advent of modern highways, which carry high-speed vehicular traffic. While we recognize that *Sisk* and *Wojdyla* were concerned with pedestrian use, we nonetheless find instructive the court's comments concerning *Molway*'s treatment of bicyclists.

Following *Wojdyla*, *Vaughn*, and *Sisk*, we look to the property itself to determine its intended use. We look for manifestations in or on the subject property signifying that defendants intended that the road and bridge be used by bicyclists.

In his third amended complaint, plaintiff alleged that as a bicyclist he was an intended and permitted user of defendants' streets and bridges. In support of this allegation, plaintiff further alleged that prior to the date of his accident defendants had erected a "slippery when wet" sign and a "bike symbol for bicyclists" in front of the bridge. In addition, plaintiff's third amended complaint alleged that Ryvold, the township highway commissioner, had admitted that

"bicyclists have been foreseeable, intended, and permitted users of the bridge."

On appeal, however, plaintiff does not contend that there was a symbol for bicyclists in front of the bridge on and before the date of his accident. Nor does he contend that Ryvold admitted that bicyclists were intended users of the road and bridge. This may be because Ryvold made it clear in his deposition that defendants did not put up any signs at the bridge relating to bicyclists until after the installation of the steel plates. Moreover, in his deposition, Ryvold did not admit that bicyclists were intended users of the road and bridge.

■ With these clarifications of plaintiff's third amended complaint in mind, our review of the record did not reveal anything, based on the property itself, that manifested an intent by defendants that bicyclists use the subject road and bridge on and before the day of plaintiff's accident. Ryvold's deposition testimony established that any sign related to bicyclists that defendants put up near the bridge was put up only after plaintiff's accident, not before the accident.

Defendants had the power and authority to put up signs and establish other manifestations of an intent that bicyclists use their roads and bridges. For example, section 6—701.7 of the Highway Code provides that township authorities may use motor fuel tax funds to place, erect, and maintain "signs or surface markings or both to indicate officially designated bicycle routes along township or district roads." 605 ILCS 5/6—701.7 (West 1996). If defendants had put such signs or markings on or near the road and bridge, then these could have manifested an intent that bicyclists use the road and bridge. See *Cole*, 201 Ill. App. 3d at 762. However, no such signs or markings appear in the record.

In the absence of any manifestation in the property itself that defendants intended bicyclists to be users of the road and bridge, we conclude that they were not intended users. Because bicyclists were not intended users, defendants did not owe plaintiff, as a bicyclist, a duty under section 3—102(a) of the Act to maintain the road and bridge in a reasonably safe condition.

Plaintiff's arguments, which rely on the Vehicle Code, Department of Transportation policies, and the Secretary of State's pamphlet setting out rules of the road for bicyclists, do not change our conclusion. We agree with defendants that these sources provide support for no more than a conclusion that bicyclists are permitted users of highways, streets, and roadways. Because we must assume that many of the safety-related reasons for regulating the activities of intended users apply equally to permitted users, the fact that such rules have been established sheds no light on the issue before us.

If a plaintiff fails to establish an element of his cause of action, such as the duty element in a negligence action, summary judgment for the defendant is proper. *Espinoza*, 165 Ill. 2d at 114. Here, plaintiff has failed to establish a duty owed to him by defendants under section 3—102(a) of the Act. Accordingly, the trial court did not err when it entered summary judgment in favor of defendants as to count I of plaintiff's third amended complaint.

■ Plaintiff next contends that count II of his third amended complaint stated a valid cause of action because a local governmental entity may not claim immunity from liability under section 3—103(a) of the Act if the entity did not obtain proper approval for a road improvement project and if, when implementing the project, the entity created an unreasonably dangerous condition. Section 3—103(a) of the Act provides:

> "(a) A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe." 745 ILCS 10/3—103(a) (West 1996).

■ Defendants respond that count II of plaintiff's third amended complaint attempts to impose a duty of care on defendants when section 3—103(a) imposes no such duty. As they did in their motion for summary judgment, defendants contend that any duty under section 3—103(a) is necessarily derived from a duty that arose under section 3—102. Defendants argue that if, as here, no duty arose under section 3—102(a), there could not be a duty under section 3—103(a) and therefore count II of plaintiff's third amended complaint could not have stated a cause of action.

We agree with defendants. Referring to the Act, our supreme court has stated that "the duty of care described in section 3—103 derives from the more basic delineation of governmental duty found in section 3—102." *Curtis v. County of Cook*, 98 Ill. 2d 158, 165 (1983). In *Curtis*, the court concluded that, if a defendant owed no duty to a plaintiff under section 3—102, then no duty existed under section 3—103. *Curtis*, 98 Ill. 2d at 165.

In this case, we have previously established that defendants did not owe plaintiff a duty of care under section 3—102. Following the

rule enunciated in *Curtis*, because no duty arose under section 3—102, no duty existed under section 3—103. In the absence of a duty owed to plaintiff under section 3—103(a), we need not further address count II of plaintiff's third amended complaint. Accordingly, we conclude that the trial court did not err when it granted summary judgment in favor of defendants with respect to count II of plaintiff's third amended complaint.

■ Plaintiff next contends that count III of his third amended complaint stated a valid cause of action in that defendants breached a duty to place various warning signs at the bridge. Plaintiff further contends that defendants are not immune from liability for their failure to place warning signs under section 3—104 of the Act (745 ILCS 10/3—104 (West 1996)) because the duty defendants breached was a ministerial duty and section 3—104 provides immunity only for discretionary acts.

In plaintiff's view, defendants' duty to put up warning signs arose under section 11—304 of the Vehicle Code (625 ILCS 5/11—304 (West 1996)). Section 11—304 of the Vehicle Code requires a local governmental entity to, *inter alia*, "place and maintain" traffic control devices, including those necessary to "regulate, warn, or guide traffic." 625 ILCS 5/11—304 (West 1996). Section 11—304 also requires that such traffic control devices "shall conform to the State Manual." 625 ILCS 5/11—304 (West 1996).

Count III of plaintiff's third amended complaint cited certain sections said to be in the appropriate state manual and alleged that these sections required defendants to implement warning signs at the bridge. Plaintiff maintains that section 11—304 of the Vehicle Code, together with the cited manual sections, constituted a statutorily imposed ministerial duty to post signs to regulate, warn, or guide traffic. Plaintiff argues that section 3—104 of the Act immunizes local governmental entities only from discretionary acts and, because this alleged duty was ministerial, section 3—104 of the Act did not immunize defendants from their failure to post the requisite signs.

Defendants respond that section 3—104 of the Act absolutely immunizes them from liability for any failure to provide warning signs as alleged by plaintiff. Section 3—104 provides:

"Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure initially to provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." 745 ILCS 10/3—104 (West 1996).

In support of his position, plaintiff relies primarily on *Snyder v. Curran Township*, 167 Ill. 2d 466 (1995). In *Snyder*, the plaintiff was injured in an automobile accident when she failed successfully to negotiate a sharp curve while driving on a narrow township road. The township had placed a sign warning of the sharp curve near the curve. The plaintiff alleged that the township's negligence in failing to place the sign in conformity with a state manual was the proximate cause of her accident and injuries. *Snyder*, 167 Ill. 2d at 467. The court rejected the township's contention that it was immune from liability under section 2—201 of the Act (745 ILCS 10/2—201 (West 1992)), which grants immunity to public entities for the performance of discretionary functions. The court determined that, once it decided to put up a warning sign, the township had a ministerial duty to erect the sign in conformity with the manual. *Snyder*, 167 Ill. 2d at 474-75.

Plaintiff asserts that *Snyder* stands for the proposition that the immunity of section 3—104 does not apply if the relevant state manual is violated. However, plaintiff's reliance on *Snyder* for this proposition is misplaced. In fact, citing *West v. Kirkham*, 147 Ill. 2d 1 (1992), with approval, the *Snyder* court noted that a local governmental entity has absolute immunity under section 3—104 for an "initial failure to erect a traffic warning device." *Snyder*, 167 Ill. 2d at 477.

In this case, count III of plaintiff's third amended complaint alleges that defendants initially failed to place signs warning of the unpaved condition of the bridge and that the road was closed to vehicular traffic. Count III does not allege that defendants had placed warning signs and that, as in *Snyder*, their placement was not in conformity with a manual. Thus, the question presented by count III of plaintiff's third amended complaint was whether defendants were immune from liability for a failure to initially erect warning signs. Section 3—104 therefore applies to the allegations of count III of plaintiff's third amended complaint and provides absolute immunity to defendants for any failure initially to place warning signs at the bridge as alleged in count III. See *West*, 147 Ill. 2d at 6-7.

Finally, plaintiff contends that defendants lost any immunity otherwise available to them under section 3—104 because they initially provided some warnings regarding the dangerous condition of the bridge. As plaintiff notes, Ryvold testified in his deposition that defendants placed trucks in front of the bridge entrances while work on the project was actually being performed. Ryvold further testified that the trucks were removed when the work stopped each day. Plaintiff asserts that this testimony shows that defendants initially provided barricades, in the form of the trucks, as a warning to motor-

ists and then removed them, leaving an unsafe condition without warnings. Plaintiff argues that section 3—104 does not apply to immunize defendants because defendants initially provided these warnings.

We note that plaintiff raises this issue on appeal for the first time in his reply brief. In addition, plaintiff did not allege in his third amended complaint that defendants had provided any barricades or other traffic control devices at the project.

Arguments not raised in an initial brief are deemed waived for purposes of review. *AXIA, Inc. v. I.C. Harbour Construction Co.*, 150 Ill. App. 3d 645, 650 (1986). Because plaintiff did not raise this issue in his initial brief, it is deemed waived for purposes of appeal.

Moreover, defects in a party's pleadings cannot be cured by argument. *West*, 147 Ill. 2d at 13. Plaintiff did not plead this issue in his third amended complaint, and he cannot cure this defect by arguing it on appeal.

For these reasons, we will not further consider this issue. Accordingly, the trial court did not err when it granted summary judgment in favor of defendants as to count III of plaintiff's third amended complaint.

Based on the foregoing, we have concluded that the trial court did not err when it granted summary judgment in favor of defendants. Consequently, we need not consider defendants' cross-appeal.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.