(No. 84246.—

## JON P. BOUB, Appellant, v. TOWNSHIP OF WAYNE et al., Appellees.

*Opinion filed October 22, 1998.*

HEIPLE, J., joined by HARRISON and NICKELS, JJ., dissenting.

Richard J. Hickey, Thomas E. Patterson and Catherine L. Fletcher, of Hickey, Driscoll, Kurfirst, Patterson & Melia, Chtd., of Chicago, for appellant.

Judge, James & Dutton, Ltd., of Park Ridge (Jay S. Judge, Edward F. Dutton and Kristine A. Karlin, of counsel), for appellees.

John Stainthorp, Robert Jones and Laurel O'Sullivan, all of Chicago (Joseph M. Tobias, of Northfield, and Jon A. Duncan, of Gene L. Armstrong & Associates, P.C., of

Oak Park, of counsel), for *amici curiae* League of Illinois Bicyclists and Chicagoland Bicycle Federation.

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, Jon P. Boub, brought this action in the circuit court of Du Page County, seeking recovery against the Township of Wayne and its highway commissioner, John Ryvold, for injuries sustained by the plaintiff in a bicycle accident on a Wayne Township bridge. The circuit court granted the defendants' motion for summary judgment, and the appellate court affirmed. 291 Ill. App. 3d 713. We allowed the plaintiff's petition for leave to appeal (166 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The plaintiff commenced the present action on September 23, 1993, by filing a complaint in the circuit court of Du Page County. After the dismissal of the plaintiff's initial and amended complaints, the plaintiff eventually filed a third amended complaint, which superseded a pending second amended complaint. According to the allegations in the plaintiff's third amended complaint, Boub was riding his bicycle on the morning of September 8, 1992, on St. Charles Road in Wayne Township, Du Page County. The accident occurred as Boub was traveling across a one-lane bridge. The surface of the bridge consisted of wood planking; some time before the accident, asphalt patching between the planks had been removed as part of a bridge renovation project, in preparation for the installation of a different bridge deck. According to the pleadings, the plaintiff was thrown from the bicycle when his front tire became stuck between two of the planks on the bridge.

The plaintiff's third amended complaint sought recovery from the defendants on several different theories of liability. Counts I and IV, sounding in negligence and willful and wanton misconduct, alleged that the defendants violated a duty owed to the plaintiff under

section 3—102(a) of the Local Governmental and Govern-
mental Employees Tort Immunity Act (745 ILCS 10/3—
102(a) (West 1996)) (Tort Immunity Act). Counts II and
V alleged negligence and willful and wanton misconduct
for failure to comply with certain statutory provisions,
including section 3—103 of the Tort Immunity Act (745
ILCS 10/3—103 (West 1996)), in making the improve-
ments to the bridge. Finally, counts III and VI, alleging
negligence and willful and wanton misconduct, sought
recovery under provisions of the Illinois Vehicle Code for
the defendants' asserted failure to properly post warning
signs at the bridge. The defendants moved for summary
judgment on all six counts. Following a hearing, the trial
judge granted the defendants' motion and entered sum-
mary judgment in their favor.

The plaintiff appealed, and the appellate court af-
firmed. 291 Ill. App. 3d 713. On appeal, the plaintiff chal-
lenged only the rulings with respect to the negligence
counts of his complaint, counts I, II, and III; he did not
challenge the disposition of the companion counts alleg-
ing willful and wanton misconduct. Regarding count I,
the appellate court concluded that the defendants were
immune from liability under section 3—102(a) of the
Tort Immunity Act. Given that result, the appellate court
concluded that count II must fail as well, for liability
under section 3—103, on which count II was based, will
not be found in the absence of liability under section
3—102(a). See *Curtis v. County of Cook*, 98 Ill. 2d 158,
165 (1983). Finally, the appellate court rejected count III,
and the plaintiff's argument that the defendants were li-
able for their failure to post or maintain proper warning
signs at the site. The defendants had appealed separately
from an order of the circuit court denying their motion
to dismiss the action as barred by the statute of limita-
tions; the appellate court did not address that question,
having resolved the other issues in the case in favor of

the defendants. We allowed the plaintiff's petition for leave to appeal. 166 Ill. 2d R. 315(a). We later granted leave to the League of Illinois Bicyclists and the Chicagoland Bicycle Federation to submit a joint brief as *amici curiae* in support of the plaintiff. 155 Ill. 2d R. 345.

Orders granting summary judgment are subject to *de novo* review (*Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 390 (1993)), and that standard therefore governs our resolution of the present appeal. The plaintiff first argues that the courts below erred in ruling that count I of the third amended complaint was barred by the immunity provisions of the Tort Immunity Act. Section 3—102(a) of the Tort Immunity Act provides:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3—102(a) (West 1996).

In *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 160 (1995), this court explained, "Section 3—102(a) of the Act only imposes a duty of ordinary care on municipalities to maintain property for uses that are *both* permitted *and intended*" (emphasis in original). Accordingly, the present plaintiff must qualify as both a permitted and an intended user of the property involved in this case if he is to maintain the action alleged against the defendants in count I of the third amended complaint. In truth, an intended user of property is, by definition, also a permitted user; a permitted user of property, however, is not necessarily an intended user. The defendants

contend that the plaintiff, as a bicyclist, was not an intended user of the road and bridge, and that he was, at most, only a permitted user. The question before us, then, concerns whether the plaintiff may also be characterized as an intended user. The plaintiff asserts that the rights of bicycle riders and vehicle drivers are generally coextensive. He observes that bicyclists have traditionally used roads and highways without restriction, and he cites a state statute that grants bicyclists the rights and duties of drivers of vehicles. The plaintiff notes further that bicyclists were not excluded from riding on the road where the present accident occurred.

To resolve the plaintiff's status under section 3—102(a), it is appropriate to look at the property involved in determining whether the plaintiff may be considered an intended and permitted user of the road and bridge where the accident occurred. "Whether a particular use of property was permitted and intended is determined by looking to the nature of the property itself." *Vaughn*, 166 Ill. 2d at 162-63. Moreover, as the statute makes clear, it is the intent of the local public entity that is controlling, for the duty expressed by section 3—102(a) is limited to those "whom the [local public] entity intended and permitted to use the property" (745 ILCS 10/3—102(a) (West 1996)).

The scope of this inquiry is demonstrated by our decision in *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417 (1992). In that case, the plaintiff's decedent was struck by a car as he attempted to reach his own vehicle by crossing a highway in the middle of a block, outside any marked pedestrian crosswalk. The plaintiff argued that the decedent was an intended user of the highway where he was crossing and that the city was liable under section 3—102(a) of the Tort Immunity Act for failure to provide sufficient lighting on that portion of the road. The driver of the vehicle that struck the decedent said

that he did not see the decedent before the accident occurred. This court concluded that the decedent was not an intended user of that portion of the highway and upheld a grant of summary judgment in favor of the defendant city. The court explained:

"To determine the intended use of the property involved here, we need look no further than the property itself. The roads are paved, marked and regulated by traffic signs and signals for the benefit of automobiles. Parking lanes are set out according to painted blocks on the pavement, signs or meters on the sidewalk or parkway, or painted markings on the curb. Pedestrian walkways are designated by painted crosswalks by design, and by intersections by custom. These are the indications of intended use. That pedestrians may be permitted to cross the street mid-block does not mean that they should have unfettered access to cross the street at whatever time and under whatever circumstances they should so choose. Marked or unmarked crosswalks are intended for the protection of pedestrians crossing streets, and municipalities are charged with liability for those areas. Those areas do not, however, include a highway in mid-block." *Wojdyla*, 148 Ill. 2d at 426.

Similar reasoning was employed in *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155 (1995). In that case, the plaintiff was injured when she stepped in a hole while crossing a street in the middle of a block. As in *Wojdyla*, the question before the court was whether the injured pedestrian was an intended and permitted user of the street where the accident occurred. After observing that a person must be both an intended and a permitted user to avoid the bar of immunity created by section 3—102(a), this court rejected the notion that the manner in which a particular injury occurs is relevant in determining the scope of a municipality's duty under that provision. The court explained:

"[T]he duty of a municipality depends on whether the *use* of the property was a permitted and intended use. [Citation.] Whether a particular use of property was permitted and intended is determined by looking to the nature of the

property itself. (*Wojdyla*, 148 Ill. 2d at 426.) The Illinois legislature has expressly limited the duty of a municipality with regard to maintaining its property to a duty of ordinary care to permitted and intended users of the property. Therefore, the question of whether a municipality owes a duty does not depend on whether the plaintiff-pedestrian was struck by a moving vehicle or tripped over a pothole, but rather depends on whether the municipality intended that the plaintiff-pedestrian walk in that part of the street where the injury occurred and permitted the plaintiff-pedestrian to do so." (Emphasis in original.) *Vaughn*, 166 Ill. 2d at 162-63.

The *Vaughn* court concluded that the plaintiff was not an intended user of the street where the accident occurred because she crossed in the absence of any pavement markings or other designations.

A later case, *Sisk v. Williamson County*, 167 Ill. 2d 343 (1995), similarly declined to impose liability for injuries sustained by an unintended user. The plaintiff in that case struck a bridge with the car he was driving and then got out to investigate the damage to his vehicle. The plaintiff fell to the creek bed below when he stepped off the edge of the pavement, which allegedly was obscured by weeds. This court held that the defendant county owed no duty to the plaintiff under section 3—102(a) of the Tort Immunity Act. The court found distinguishable cases allowing recovery when persons are injured by conditions of the pavement in areas where cars are intended to park. The court explained:

"In contrast, there are no such manifestations to indicate that Williamson County intended pedestrians to walk on its country roads, much less the specific road and bridge complained of by plaintiff in the case at bar. As the appellate court noted, there are no walkways or crosswalks on rural country roads such as the county-line road in this case. Further, many country roads are gravel roads and often have no shoulder. We believe that the inference to be drawn from these facts, if any, is that municipalities do not intend that pedestrians walk on rural country roads. Al-

though it may become necessary at times for pedestrians to walk on country roads, such use is not a manifestation of the local municipality's intent that pedestrians walk on its country roads or an undertaking by the municipality to make country roads free from defects that might injure pedestrians." *Sisk*, 167 Ill. 2d at 351-52.

Guided by the preceding discussions in *Wojdyla*, *Vaughn*, and *Sisk*, we turn now to the site of the present accident. We recognize the factual differences that exist between this case and the pedestrian cases surveyed above. Bicyclists, unlike pedestrians, are guided by some of the same signs and pavement markings that motorists observe. Still, we believe that the same considerations present in our decisions in those cases are also relevant here in determining whether the plaintiff was an intended user—rather than simply a permitted user—of the road and bridge. In determining Wayne Township's intent, it is necessary to look at pavement markings, signs, and other physical manifestations of the intended use of the property. Just as the presence or absence of special pavement markings and signs is relevant in determining whether pedestrians are intended users of streets and highways, so too do we believe that the presence or absence of pavement markings and signs is relevant here in determining whether the plaintiff was an intended user of the road and bridge where the accident occurred. In the present case, there is nothing in the roadway or bridge that would suggest that it was intended for use by bicycles. No special pavement markings or signs indicated that bicyclists, like motorists, were intended to ride on the road or bridge, or that bicycles, rather than vehicles, were the intended users of the route. *Cf. Cole v. City of East Peoria*, 201 Ill. App. 3d 756 (1990) (municipality liable for injury caused when bicyclist's tire became stuck in sewer grate; applying section 3—102(a) of Tort Immunity Act, appellate court concluded that special pavement markings showed that

city intended and permitted bicyclists to travel where accident occurred).

That the township, after the plaintiff's accident, later erected signs—a bicycle symbol and the legend, "Slippery when wet"—at the approaches to the bridge does not signify to us the township's intent before the accident here. Subsequent remedial measures or warnings, of course, may not be used as evidence of negligence. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 300-01 (1995). Similarly, we do not believe that Wayne Township's subsequent placement of signs, installed after the accident, is indicative of the township's prior intent.

The plaintiff raises several arguments in support of his contention that he was an intended user of the road and bridge where his accident occurred. The plaintiff notes that section 11—1502 of the state Vehicle Code provides that "[e]very person riding a bicycle upon a highway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this Code ***." 625 ILCS 5/11—1502 (West 1996).

The defendants do not concede that state statutes are applicable in determining Wayne Township's intent regarding the use of the road and bridge in this case. As we have noted, under section 3—102(a) of the Tort Immunity Act it is the intent of the local public entity that controls; accordingly, the intent of another public body, whether it is the state, a county, or other local entity, should be irrelevant. Nonetheless, the defendants argue that state statutes, to whatever extent they might be relevant to our inquiry here, fail to sustain the plaintiff's position in this case. We agree. We do not believe that section 11—1502 of the Vehicle Code supports the conclusion that bicycle riders are, like drivers of vehicles, intended and permitted users of Illinois streets and highways. The provision seems designed to ensure that

bicyclists, for their own safety and the safety of others, obey traffic laws while they are on public streets and highways. In fact, the legislature gave that section the title, "Traffic laws apply to persons riding bicycles." The provision cited by the plaintiff is entirely consistent with the conclusion that bicyclists are permitted, but not intended, users of the roads, in the absence of specific markings, signage, or further manifestation of the local entity's intent that would speak otherwise.

Moreover, other statutory provisions suggest that bicyclists are generally not intended users of Illinois roads, streets, and highways. For example, the Vehicle Code defines "highway" as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." 625 ILCS 5/1—126 (West 1996). The Vehicle Code defines "roadway" as "[t]hat portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of the berm or shoulder" (625 ILCS 5/1—179 (West 1996)), and it defines "street" as "[t]he entire width between boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel" (625 ILCS 5/1—201 (West 1996)). The Vehicle Code defines "[v]ehicle" as "[e]very device, in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power, devices used exclusively upon stationary rails or tracks and snowmobiles as defined in the Snowmobile Registration and Safety Act." 625 ILCS 5/1—217 (West 1996). In contrast to "[v]ehicle," the Code defines "[b]icycle" as "[e]very device propelled by human power upon which any person may ride, having two tandem wheels except scooters and similar devices." 625 ILCS 5/1—106 (West 1996).

Similarly, the Highway Code defines "highway" in the following manner:

"Highway—any public way for vehicular travel which has been laid out in pursuance of any law of this State, or of the Territory of Illinois, or which has been established by dedication, or used by the public as a highway for 15 years ***. The term 'highway' includes rights of way, bridges, drainage structures, signs, guard rails, protective structures and all other structures and appurtenances necessary or convenient for vehicular traffic. A highway in a rural area may be called a 'road', while a highway in a municipal area may be called a 'street'." 605 ILCS 5/2—202 (West 1996).

As the defendants contend, the preceding definitions suggest that highways, streets, roads and bridges in Illinois are primarily designed and intended for use by vehicles, and not by bicycles.

The plaintiff and *amici* also observe that bicyclists have customarily and traditionally used county roads such as the one involved in this case. Citing *Marshall v. City of Centralia*, 143 Ill. 2d 1 (1991), they argue that bicyclists must therefore be deemed both intended and permitted users of the road at issue. We do not agree. In *Marshall* the plaintiff, a minor, was injured when he fell into an open sewer manhole on a parkway—the grassy area between the sidewalk and the street—in a residential area. This court found that the defendant city could be liable for the injury under section 3—102(a) of the Tort Immunity Act, concluding that the child's walking on the parkway was an intended use. In support of that conclusion, the court noted that parkways historically have been used for a number of purposes by pedestrians.

We do not construe *Marshall* as establishing that historical practice alone is sufficient to make a particular use of public property an intended one. In ruling for the plaintiff, the court explained:

"We are not persuaded by defendant's argument that parkways are areas of beauty that were constructed with the intention that they only be looked at and not walked upon. It is this court's opinion that parkways, while

beautifying the street, are also intended for the limited use of pedestrians, such as the plaintiff in the instant case." *Marshall*, 143 Ill. 2d at 9-10.

The court then noted the different manners in which pedestrians have used parkways in the past. Rather than establish historical practice as the touchstone by which intended use must be measured, the *Marshall* court simply referred to historical practice in attempting to ascertain the intended use, if any, of parkways.

In addition, *amici* observe that the portion of St. Charles Road involved in this case was designated "a through street generally suitable for bicycling" by the Du Page County board in 1983. Such a designation, however, is consistent with our conclusion that bicyclists are only permitted users of the road in question. That bicyclists are not intended users does not, of course, mean that they are prohibited from roads and highways, for this determination has no effect on their status as permitted users. We note that the present case does not involve a street or road with specially marked lanes for bicycle use or the opposite situation of signs prohibiting the presence of bicyclists. As this court noted in *Sisk*:

"Second, the appellate court apparently failed to recognize the difference between 'permitted' and 'intended' uses under section 3—102(a) of the Act. The court noted that rural country roads are commonly used by persons other than drivers of automobiles, listing such uses as horseback riding, bicycling, jogging, walking and driving farm equipment. [Citation.] However, most of the activities listed are also common uses of city and residential streets. Illinois courts have concluded that although pedestrians may be permitted users, they are not intended users of streets outside of marked crosswalks or other areas designated and intended for the protection of pedestrians." *Sisk*, 167 Ill. 2d at 349.

As *Sisk* noted, a broad range of permitted uses by different groups of users is compatible with an intended use only by vehicles. The county board's designation of this

road as one suitable for bicycle riding is not inconsistent with our conclusion that bicyclists are not intended users of the road. Moreover, we iterate that our inquiry is limited under section 3—102(a) to determining the intent of the local public entity, Wayne Township in this case. The intent of the Du Page County board is not determinative.

The plaintiff argues further that this result is inconsistent with the decision in *Molway v. City of Chicago*, 239 Ill. 486 (1909). Citing *Molway*, the plaintiff contends that bicyclists must be considered intended and permitted users of Illinois streets and highways. The plaintiff in that case was injured when the bicycle he was riding hit a hole in the street. On appeal, the defendant city sought a new trial on the ground that the trial judge erroneously failed to instruct the jury that the city was required only to make the streets safe for "ordinary travel" and that "ordinary travel" did not include bicycle riding. This court concluded that the trial judge acted properly in refusing the city's instructions. From *Molway* the plaintiff would derive the principle that bicyclists are intended users of Illinois roads and highways.

We do not find *Molway* persuasive in the present context. As an initial matter, we must observe that the decision in that case predates by many years the enactment of the Tort Immunity Act, and the *Molway* court therefore was not required to consider whether that plaintiff was an intended and permitted user of the street in question. Moreover, the accident in *Molway* occurred in 1905, long before motorized vehicles became the predominant users of Illinois streets and highways. The opinion's numerous references to conveyances such as horse-drawn wagons and carriages illustrate the vast gulf that separates that case from the present one. *Molway*, 239 Ill. at 490 ("An asphalt pavement, even when level, is practically impassable for a horse ordinarily shod

when the pavement is covered with a slight coating of ice or sleet, and yet a cyclist, on account of his rubber-tired vehicle, can pass over it readily"). In *Sisk* this court also found *Molway* inapplicable, explaining:

"The plaintiff cites *Molway* [citation] in support of his contention that he was an intended user. In *Molway* the court found that the City of Chicago owed a duty of reasonable care to persons riding bicycles on city streets. However, *Molway* was decided over 50 years before the [Tort Immunity Act] was enacted, and at a time when streets were being constructed for pedestrians, equestrians and horse-drawn vehicles, and when automobiles were just beginning to appear. Consequently, we do not feel *Molway* is applicable to the case at bar." *Sisk*, 167 Ill. 2d at 350-51.

For similar reasons, we do not find *Molway* controlling here. See also *Wojdyla*, 148 Ill. 2d at 423-24.

The plaintiff also contends that the appellate court's result in this case conflicts with the decisions of the appellate court in *Filipetto v. Village of Wilmette*, 254 Ill. App. 3d 461 (1993), and *Bauer v. H.H. Hall Construction Co.*, 140 Ill. App. 3d 1025 (1986). Though we are not bound by decisions of the appellate court, we note that the cases cited by the plaintiff are distinguishable from the present one, and therefore we do not discern the same conflict perceived by the plaintiff. The plaintiff in *Filipetto*, a bicycle rider, was injured when he struck a compressor that was located in a lane of the street in which he was riding his bicycle. The jury returned a verdict in favor of the plaintiff. The appellate court discussed section 3—102(a) of the Tort Immunity Act, but did not address the plaintiff's status as an intended and permitted user. *Bauer*, also cited by the plaintiff, involved a collision between a bicyclist and a highway barricade. The action in that case was brought under a different statute, the Road Construction Injuries Act, and no question arose regarding the plaintiff's classification as an intended and permitted user under section 3—102(a) of the Tort Immunity Act.

*Amici* also invoke a number of policy considerations in support of the imposition of liability in this case. They argue that granting the defendants immunity would only serve to create a powerful disincentive to the continual upgrading and improvement of bicycle routes in the state. They note that the Illinois Department of Transportation has directed that bicycle safety concerns should be considered when improvements to roads are made. We believe that these questions of public policy, however, are better resolved by the legislative branch of government than by the judicial branch.

Indeed, the potential implications of such a shift in policy are substantial and far-reaching, and we do not believe that the legislature intended to impose liability in these circumstances. Simply put, many road conditions that do not pose hazards to vehicles may represent special dangers to bicycles, and imposition of liability in this case would, we believe, open the door to liability for a broad range of pavement conditions, such as potholes, speed bumps, expansion joints, sewer grates, and rocks and gravel, to name but a few. By the same token, we believe that imposition of municipal liability in the circumstances shown here is more appropriate for the legislature to initiate, if it is to be done at all. In this regard, it is appropriate to consider the potentially enormous costs both of imposing liability for road defects that might injure bicycle riders and of upgrading road conditions to meet the special requirements of bicyclists. *Vaughn*, 166 Ill. 2d at 164 ("The costs of making all public streets and roadways reasonably safe for unrestricted pedestrian use would be an extreme burden on municipalities with limited resources"); see also *Sisk*, 167 Ill. 2d at 352.

In sum, there are no affirmative manifestations here that Wayne Township intended—rather than simply permitted—bicyclists to use the road and bridge where

the accident occurred. We have no quarrel with the proposition that bicycle riders are permitted users of the road and bridge involved in this case; we do not believe, however, that they must also be considered intended users of those facilities, within the scope of section 3—102(a) of the Tort Immunity Act. There is no question of fact on this record, and summary judgment was appropriately entered in favor of the defendants.

Before this court, the plaintiff briefly raises the additional argument that liability may be found under count III of his third amended complaint. Count III seeks recovery under section 11—304 of the Vehicle Code (625 ILCS 5/11—304 (West 1996)) for the defendants' failure to properly post warning signs at the bridge while the renovation project was underway.

Our cases have found immunity under section 3—104 of the Tort Immunity Act (745 ILCS 10/3—104 (West 1996)) for the initial failure to provide specific warning devices. *Snyder v. Curran Township*, 167 Ill. 2d 466 (1995); *West v. Kirkham*, 147 Ill. 2d 1 (1992). The plaintiff contends, however, that trucks parked on the roadway in front of the bridge by the construction crew during the workday represented barricades, and that the defendants negligently failed to maintain them there after the crew finished working and left. Without determining here whether trucks may constitute barricades for purposes of section 3—104 of the Tort Immunity Act, we must reject this additional basis for recovery. As the appellate court noted and the defendants contend, the plaintiff has attempted to introduce a new theory in support of liability under this count, for he failed to make the same allegation in his third amended complaint. 291 Ill. App. 3d at 725-26. The plaintiff cannot now attempt to introduce this new element into the case. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996).

Given our result here, we have no occasion to ad-

dress the defendants' alternative contention that the action is barred by the statute of limitations.

For the reasons stated, the judgment of the appellate court, affirming the judgment of the circuit court of DuPage County, is affirmed.

*Judgment affirmed.*

JUSTICE HEIPLE, dissenting:

The majority holds that bicyclists are not intended users of roadways. I respectfully dissent from this absurd and dangerous proposition.

On September 8, 1992, plaintiff Jon Boub was riding his bike along St. Charles Road in Wayne Township. Unbeknown to plaintiff, the Township was in the process of resurfacing a bridge over which the road passes. As part of this construction project, the Township had removed sections of asphalt between wooden planks on the surface of the bridge, leaving empty spaces between the planks. As plaintiff rode over the bridge, the front wheel of his bike suddenly became stuck in one of these spaces, causing the rear of the bike to spring into the air. As a result, plaintiff was thrown off the bike and into the bridge's steel railing and support structure, suffering severe injuries.

A local public entity has a duty to maintain its roads in a safe condition for the roads' intended users. 745 ILCS 10/3—102 (West 1992). The majority's conclusion that bicyclists are not intended users of roads defies common sense, contravenes statutory authority, and frustrates public policy.

Both motorists and bicyclists commonly recognize that, in the absence of a designated corridor for bike riding, bikes are intended to share the road with automobiles. Even schoolchildren are taught to ride their bikes on the right side of the road, to obey all traffic laws, and to use appropriate signals to communicate with motorists. The majority's assertion that bicyclists are not

intended users of roadways therefore contradicts the experience, understanding and training of reasonable people.

Numerous statutes and regulations validate this common perception that bicyclists are intended to use public roads. First, the Illinois Vehicle Code provides that bicyclists "shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle." 625 ILCS 5/11—1502 (West 1992). The Vehicle Code then proceeds to specify the areas and manner in which bicyclists are required to ride on roadways. 625 ILCS 5/11—1503 through 11—1514 (West 1992). Second, the State of Illinois has officially adopted a policy requiring that the "safe accommodation" of bicyclists "be given full consideration during the development of highway projects." Illinois Department of Transportation Memorandum § 2.00 (August 1, 1995). Third, local governments frequently designate particular roads as bicycle routes, and in fact, the road on which plaintiff in the instant case was injured had been so designated by DuPage County. All of the above provisions demonstrate that roadways in the State of Illinois are intended to be used by bicyclists.

The majority attempts to dismiss these statutory and regulatory provisions by arguing that they do not demonstrate the intent of Wayne Township, the defendant in the instant case. The cited provisions are, however, applicable to roads within the Township. The Township fails to cite any evidence indicating that, prior to plaintiff's accident, it objected to the policy embodied in these provisions, or in any way attempted to· communicate to bicyclists that it did *not* intend for them to use its roads.

The majority also counters the cited provisions with statutory definitions. establishing that the primary purpose of Illinois highways is to facilitate travel by

motorized vehicles. There can be no argument with this elementary observation. Far more automobiles than bicycles are in regular use, and highways are constructed primarily to meet the needs of motorists. This fact, however, does not in any way disprove that bicyclists are also intended to use public roads. The two propositions are not mutually exclusive. Roads are intended to be used *primarily* by automobiles, but *also* by bicycles.

Finally, the majority's holding is both irrational and dangerous as a principle of public policy. The accident which befell plaintiff in this case could just as easily have befallen a motorcyclist, but under the majority's standard, the latter could recover while the former cannot. There is no rational basis for this distinction. Furthermore, under the majority's standard, even a road condition which is dangerous to automobiles would not be sufficient to create a legal duty to the instant plaintiff. For example, if the construction crew had removed the entire bridge without closing off the area to traffic, a motorist whose car crashed into the abyss could maintain a suit against the Township, while plaintiff, after suffering the same fate on his bicycle, could not. This conclusion was conceded by defendants' counsel at oral argument. See also *Bauer v. H.H. Hall Construction Co.*, 140 Ill. App. 3d 1025, 1030 (1986) (noting anomaly of allowing a motorist to bring an action for injuries sustained in an accident while precluding a bicyclist from bringing an action for the same type of accident).

Besides depriving injured bicyclists of just compensation for their injuries, the principal effect of the majority decision will be to discourage municipalities from taking any measures to make roads safer and more hospitable for bicyclists. Because the majority precludes liability whenever the municipality in question does not intend for bicyclists to use its roads, a loss-averse municipality, in order to minimize its exposure to liability, might

remove from its roads any evidence that bicyclists are intended users, such as bike lanes or special signs. Bicyclists would then be in even more jeopardy than that occasioned by today's decision. Given the majority's ruling, the only safe bicycle in Illinois is a stationary exercise bike located in one's home or at the gym.

JUSTICES HARRISON and NICKELS join in this dissent.