2024 IL App (1st) 232238-U

No. 1-23-2238

Order filed August 9, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MARTIN JOHNSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 21 L 2314 |
| THE VILLAGE OF PALATINE, a Municipal | ) | |
| Corporation, | ) | Honorable |
| | ) | Nichole C. Patton, |
| Defendant-Appellee. | ) | Judge, presiding. |

PRESIDING JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Summary judgment in favor of defendant village affirmed where the village did not owe a duty of care to plaintiff bicyclist who was not an intended user of the sidewalk where he struck uneven pavement and sustained injuries.

¶ 2   Plaintiff, Martin Johnson, appeals from an order of the circuit court of Cook County granting summary judgment in favor of defendant, the Village of Palatine (Village). The circuit court found that the Village did not owe a duty of care to bicyclist Johnson because he was not an

intended user of the sidewalk. On appeal, Johnson contends he was an intended user of the subject sidewalk where no signs prohibited bicyclists, it was the only sidewalk on the high-traffic street, and there were no marked or designated bicycle lanes on the street. Johnson further contends that the condition of the sidewalk was not open and obvious. For the following reasons, we affirm.

¶ 3    Johnson filed a complaint against the Village asserting that on June 11, 2020, he was riding his bicycle on a sidewalk that ran parallel with Quentin Road in Palatine when he struck an uneven section of the sidewalk, causing him to fall to the ground and sustain serious injuries. Johnson alleged that the Village negligently failed to maintain or repair the sidewalk, rendering it dangerous and unsafe for use.

¶ 4    In its answer to Johnson's complaint, the Village raised, *inter alia*, the affirmative defense that Johnson's cause of action was barred by section 3-102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3-102(a) (West 2020)) because Johnson, a bicyclist, was not an intended and permitted user of the subject sidewalk. The Village also raised the affirmative defense that the cause of action was barred because the condition of the sidewalk was open and obvious, and in the exercise of due care and caution, Johnson should have seen the condition and taken all necessary measures and precautions to avoid any risks.

¶ 5    Following discovery, the Village moved for summary judgment on three bases. First, the Village argued that it did not owe Johnson a duty of care under section 3-102(a) of the Act because, as a bicyclist, Johnson was a permitted but not an intended user of the subject sidewalk. The Village argued that photographs of the sidewalk and the surrounding area showed there were no signs or pavement markings that indicated bicyclists were intended users of the sidewalk. It further asserted that the Village's bicycle ordinance provided that bicyclists were permitted to ride on

sidewalks except in areas where signage explicitly prohibited them, but the ordinance contained no language indicating bicyclists were intended users of sidewalks. In addition, the Village argued that its creation of a dedicated bicycle path system throughout the Village established that it intended for bicyclists to use that system and did not intend for them to ride on the sidewalks. The Village noted the bicycle paths were wider than sidewalks and included bicycle lanes on streets.

¶ 6    Second, the Village argued it did not owe Johnson a duty of care because the alleged sidewalk defect was open and obvious. The Village argued that photographs showed the condition of the sidewalk was not concealed or obscured but was prominently visible from a distance of 30 to 35 feet. It further argued that, although Johnson testified in his deposition that he did not see the condition as he approached it, his testimony was contradicted by the photographs.

¶ 7    Finally, the Village argued it was entitled to discretionary immunity under section 2-201 of the Act (745 ILCS 10/2-201 (West 2020)) regarding its proactive sidewalk replacement program. Johnson had alleged in his complaint that the Village's program permitted sidewalk defects to exist for too long and worsen over time. The Village argued that Johnson had not alleged that it negligently performed an inspection or repair on the sidewalk at issue but, instead, broadly argued that the Village should have allocated more funds to its program to perform inspections and repairs more frequently. The Village argued that its decision regarding the amount of funds it allocated annually to its sidewalk replacement program was protected from liability.

¶ 8    The Village attached numerous documents to its motion for summary judgment including Johnson's deposition. Johnson testified that in 2020, he rode his bicycle about 10 miles daily and often rode on the Village's bike paths and through the forest preserves. About 9:30 a.m. on June 11, 2020, Johnson left his home on his bicycle and took a route he had never ridden before on his

way to the forest preserve. It was a sunny day. Johnson testified that he tried to avoid riding on the streets but sometimes had to "take a sidewalk which [was] permissible in Palatine."

¶ 9    Johnson rode his bicycle on the sidewalk that ran parallel with the west side of Quentin Road. He was looking straight ahead into the distance and glanced down "at the last second." His bicycle struck the side of a manhole cover and he lost control. The bicycle then struck an uneven portion of the sidewalk. Johnson flew over the handlebars, rolled down an embankment, and landed in a bush, sustaining injuries. Johnson acknowledged nothing was covering the sidewalk's condition. Had he noticed the condition, he would have ridden or walked his bicycle around it.

¶ 10    Johnson also acknowledged that several photographs accurately depicted the condition of the sidewalk at the time of the accident. The photos showed a rectangular portion of the sidewalk was uneven with the rest of the sidewalk. The right side of the rectangular portion was protruding above ground and the left side was sunken below the level of the rest of the sidewalk.

¶ 11    The Village also attached to its motion for summary judgment depositions from five of its employees. Matt Barry, the Village's public works director, testified that the Village had two sidewalk replacement programs, one proactive and one reactive. In the proactive program, the Village's 246 miles of sidewalk was divided into zones. Each year, an engineer walked a specific geographical zone and inspected the sidewalks, marking and taking note of any areas that required repair. In the reactive program, someone reported a defect in a sidewalk to the Village and the Village then inspected that sidewalk and made any needed repairs. The Village allocated a specific amount of money for sidewalk repairs each year. Barry acknowledged the condition of the subject sidewalk met the Village's repair criteria.

¶ 12    Barry testified that one benefit of the Village's proactive sidewalk replacement program was that "it enhance[d] usability for pedestrians." He further stated, "[i]t enhances [usage] for the primary users, the pedestrians of the sidewalk." Barry acknowledged Johnson was "permitted" to ride his bicycle on the subject sidewalk.

¶ 13    Village Manager Reid Ottesen testified that, as a bicyclist, Johnson was a permitted user of the subject sidewalk but was not an intended user. Pedestrians were the intended users of the sidewalk. The Village had off-road bike paths and designated, marked bike lanes on roadsides where bicyclists were the intended users. The Village also had certain areas such as business zones where bicyclists were not permitted to ride on the sidewalks.

¶ 14    James McCullar, the Village's superintendent of operations, testified that bicyclists were permitted to use the sidewalks. McCullar confirmed that the Village's bike paths were intended to be used by bicyclists and sidewalks were intended to be used by pedestrians. He further agreed that a "standard sidewalk," like the one at issue in this case, was intended for use by pedestrians, not bicyclists.

¶ 15    Mark Grabowski, a civil engineer with the Village, agreed that pedestrians walking or running, cyclists, people in wheelchairs, and people on scooters were allowed to use the Village's sidewalks. He testified, however, that pedestrians were the intended users of the sidewalks. The subject sidewalk on Quentin Road was constructed with the intended purpose of being used by pedestrians, but bicyclists were permitted to use that sidewalk. Bicyclists were the intended users of the Village's bike path system.

¶ 16    Daniel Neyfeldt, a street division coordinator for the Village, testified that a sidewalk is typically four-and-a-half to five feet wide, and some older ones are narrower. The Village's bike

path system had asphalt paths that were eight feet wide or wider to accommodate bicyclists and pedestrians. The subject sidewalk on Quentin Road was not part of the Village's bike path system. The bike path system runs "just north" of that stretch of Quentin Road. Bicyclists were permitted to use the Village's sidewalks.

¶ 17    The Village also attached its chapter of traffic ordinances to its motion for summary judgment. Section 18-9 of the ordinances provided, "except in business districts, bicycles may be ridden on sidewalks." Palatine Code of Ordinances § 18-9. Section 18-143, entitled "Regulations for the operation of bicycles" stated that "[n]o person shall ride a bicycle upon a sidewalk, street, business plaza, or upon any public way on which official signs have been erected by the authority of the village board prohibiting such bicycle riding." Palatine Code of Ordinances § 18-143(b). The section further stated that "[w]henever a person is operating a bicycle upon a sidewalk or street, that person shall yield the right-of-way to any pedestrian and shall give an audible signal before attempting to overtake and pass a pedestrian or other bicycle." Palatine Code of Ordinances § 18-143(i).

¶ 18    In addition, the Village attached to its motion a document listing annual expenditures for its sidewalk replacement and extension program from 2019 through 2023. The justification for the program stated, "The replacement program should be continuous in order to keep up with replacement of public sidewalks as they become damaged. This program will reduce lawsuits which result from pedestrians injuring themselves due to deteriorated sidewalks."

¶ 19    Johnson filed a response to the Village's motion for summary judgment arguing that he was both an intended and permitted user of the subject sidewalk. Johnson argued that based on all the testimony and the ordinances, it was undisputed that he was permitted to ride his bicycle on

the sidewalk. He further argued that he was an intended user because the subject sidewalk was the only appropriate place for him to ride his bicycle as there was no bicycle lane on the busy high-speed road. Johnson also pointed out that several sections of the Village's ordinances contained the words "sidewalk" and "bicycle" in the same provision, and section 18-143 specifically applied to bicyclists riding on sidewalks. Thus, he claimed the Village explicitly intended for "bicycles and sidewalks to be considered in unison." Johnson asserted that, if the Village had not intended for bicyclists to ride on the sidewalk, it could have posted a sign in the area or expressly stated so in its ordinance.

¶ 20    Johnson also argued that summary judgment was not appropriate because reasonable minds could differ as to whether the sidewalk defect was open and obvious. In addition, Johnson argued that the Village was not entitled to discretionary immunity because it voluntarily undertook the responsibility of implementing a sidewalk repair program and, therefore, had a duty to use reasonable care in operating that program but failed to do so.

¶ 21    The Village filed a reply maintaining that Johnson was not an intended user of the sidewalk. It asserted that Johnson had conflated the distinction between intended and permitted users, essentially arguing that because bicyclists were not prohibited from using the subject sidewalk, the Village must have intended them to do so. The Village argued that its ordinances established that bicyclists were permitted to use some of its sidewalks but did not establish that they were the intended users of all the sidewalks. It further argued that, unlike its bike path system, there were no signs, markings, or other indications that the subject sidewalk was intended for use by bicyclists.

¶ 22    The Village also maintained that numerous photographs established that the sidewalk's condition was plainly and prominently visible from a distance such that it could be deemed open

and obvious as a matter of law. It also argued that its proactive sidewalk replacement program should not be construed as a voluntary undertaking as it was an internal policy that did not create a duty and was precisely the type of act protected by discretionary immunity.

¶ 23 The circuit court entered summary judgment in favor of the Village. Initially, the court found a question of fact existed regarding the visibility of the sidewalk defect and, therefore, it could not find the condition was open and obvious as a matter of law. As to discretionary immunity, the court found the Village was entitled to immunity as to some of Johnson's allegations regarding the sidewalk replacement program, but it was not immune from all such allegations. Nevertheless, the circuit court found that Johnson failed to prove he was an intended and permitted user of the subject sidewalk where he was injured. Accordingly, the Village did not owe him a duty under section 3-102(a) of the Act and summary judgment in favor of the Village was proper.

¶ 24 Johnson filed a motion for reconsideration arguing that the circuit court erred when it found he was not an intended user of the sidewalk. Johnson claimed the court failed to consider or give proper weight to the Village's ordinances, the testimony from its employees, and the nature of Quentin Road. He argued that the ordinances contained no provision stating bicyclists were not intended to ride on the Village's sidewalks. He further argued there was no sign prohibiting bike riding on Quentin Road and, thus, no way for a citizen, or the court, to conclude that the Village intended to "preclude" bicyclists from the subject sidewalk. Johnson again pointed out that several sections of the Village's ordinances addressed the use of bicycles on sidewalks which indicated the Village's intent that bicyclists could use the sidewalks unless a sign in the area prohibited that use. Johnson also argued that the nature of the subject sidewalk supported a finding that he was an intended user. Johnson argued that Quentin Road, a high-traffic four-lane street, did not have a

bike path, a bike lane, or a shared-lane marking thereby making it reasonable to conclude that the Village intended the subject sidewalk to be used by bicyclists.

¶ 25    In response, the Village argued that Johnson's motion to reconsider did not raise any new evidence or arguments but, instead, continued to improperly equivocate the distinction between permitted users and intended users. The Village asserted that, although there was no indication that it intended that Johnson ride his bicycle on the busy street, it did not mean that it intended for him to ride on the subject sidewalk. The Village further argued that, although bicyclists were permitted to ride on some of the sidewalks, pedestrians, not bicyclists, were the intended users of the sidewalks. Bicyclists, skaters, and pedestrians were all intended users of the Village's bike path system, which was widened for that purpose.

¶ 26    The circuit court denied Johnson's motion to reconsider. The court found that Johnson's motion presented "nearly identical arguments that the Court already considered" when granting the Village's motion for summary judgment. The court noted that disagreement with its ruling was not grounds for a motion to reconsider. The court further found that Johnson continued to "conflate" permitted users and intended users. It also found that he erroneously argued that, because the subject sidewalk was the only viable alternative, he must have been both an intended and permitted user of that sidewalk.

¶ 27    On appeal, Johnson contends he was an intended user of the subject sidewalk where no signs prohibited bicyclists, it was the only sidewalk on the high-traffic street, and there were no marked or designated bicycle lanes on the street. Johnson argues his only options were to ride his bicycle on a dangerous road or use the subject sidewalk. Johnson further argues that the Village's ordinances indicate bicycles were intended to use the sidewalks where section 18-143 addresses

bicycle regulations on sidewalks, bicyclists are allowed to use sidewalks unless signage prohibits such use, and there is no provision that states that bicycles cannot be ridden on sidewalks.

¶ 28    Johnson also argues that the purpose of section 3-102(a) of the Act is to codify a municipality's duty to maintain its roads and, therefore, the statute is meant to help users, not defend municipalities. He claims that the statute's language applying to "people whom the entity intended and permitted to use the property" was never meant to limit liability for certain "use" of the property, such as walking or cycling, but, instead, addresses "people" whom the entity intended to use the property. Johnson asserts that, as a citizen of Palatine, he is a person the Village intended to use the sidewalk and, thus, the Village owed him a duty. In addition, Johnson contends that the circuit court correctly found that the issue of whether the condition of the sidewalk was open and obvious is a question of fact that must be decided by a jury.

¶ 29    The Village responds that the circuit court properly granted summary judgment in its favor because Johnson failed to produce any evidence that he was an intended user of the subject sidewalk. The Village argues that the nature of the property shows Johnson was not an intended user of the subject sidewalk where there were no signs or markings for bicycle usage. It asserts that the lack of a suitable alternative to riding on the busy street did not render Johnson an intended user of the subject sidewalk. The Village further argues that the language in its ordinances does not indicate bicyclists are intended users of the sidewalks but, instead, sets forth conditions under which bicyclists are permitted to ride on sidewalks. The Village points out that its employees all testified that Johnson was permitted to ride his bicycle on the sidewalk, but he was not an intended user. It asserts that bicyclists are intended users of its bike path system.

¶ 30    The Village further argues that the "intended and permitted" language of the statute is a qualification on how the property is used, not on who uses it. It asserts that Johnson's interpretation distinguishing between invitees and trespassers is contrary to our supreme court's precedent. Alternatively, the Village argues that the condition of the sidewalk was open and obvious, which was an independent basis that supported a finding of summary judgment in its favor.

¶ 31    Summary judgment is appropriate where the pleadings, depositions, admissions on file, and affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). "Although a plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle the party to a judgment." *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). We review the circuit court's order granting summary judgment *de novo*, construing all the evidence strictly against the movant and in the light most favorable to the nonmoving party. *Gillespie v. Edmier*, 2020 IL 125262, ¶ 9.

¶ 32    In a negligence action, it is the plaintiff's burden to allege and prove all the elements of his claim, including that the defendant owed the plaintiff a duty, the defendant breached that duty, and the breach was the proximate cause of the plaintiff's injuries. *Alave v. City of Chicago*, 2023 IL 128602, ¶ 37. Whether the defendant owed the plaintiff a duty of care is a question of law for the court to decide. *Quiroz v. Chicago Transit Authority*, 2022 IL 127603, ¶ 13.

¶ 33    A municipality has a common-law duty to maintain its public property in a reasonably safe condition so that people using ordinary care are not injured. *Alave*, 2023 IL 128602, ¶ 38. This duty has been codified in Section 3-102(a) of the Act which states, in relevant part:

> "a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used[.]" 745 ILCS 10/3-102(a) (West 2020).

¶ 34    Section 3-102(a) of the Act imposes a duty of ordinary care on municipalities to maintain property only " 'for uses that are *both* permitted *and intended.*' " (Emphases in original.) *Alave*, 2023 IL 128602, ¶ 39 (quoting *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 160 (1995)). Thus, here, Johnson must be both a permitted and intended user of the subject sidewalk to maintain his litigation against the Village. See *Alave*, 2023 IL 128602, ¶ 39. "[A]n intended user of property is, by definition, also a permitted user; a permitted user of property, however, is not necessarily an intended user." *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524 (1998).

¶ 35    Here, it is undisputed that Johnson, as a bicyclist, was a permitted user of the subject sidewalk. The dispositive issue in this case is whether Johnson was also an intended user of the sidewalk.

¶ 36    To determine whether a use of municipal property is an intended use under section 3-102(a) of the Act, we must conduct a multifactor analysis limited to the facts of each case. *Alave*, 2023 IL 128602, ¶ 40. Relevant factors include "looking at the nature of the property itself and looking for affirmative manifestations such as signs, pavement markings, and other physical manifestations to show that the City intends—rather than merely permits—the [sidewalk] to be used in a certain manner." (Internal quotation marks and citations omitted.) *Id.* It is the intent of the municipality that is controlling, not the intent of the user. *Boub*, 183 Ill. 2d at 525.

¶ 37    As mentioned above, the parties point to multiple sections of the Village's traffic ordinances that address bicycle usage on the sidewalks. Section 18-9 states, "except in business districts, bicycles may be ridden on sidewalks." Palatine Code of Ordinances § 18-9. Section 18-143, entitled "Regulations for the operation of bicycles" states that "[n]o person shall ride a bicycle upon a sidewalk, street, business plaza, or upon any public way on which official signs have been erected by the authority of the village board prohibiting such bicycle riding." Palatine Code of Ordinances § 18-143(b). The section further states that "[w]henever a person is operating a bicycle upon a sidewalk or street, that person shall yield the right-of-way to any pedestrian and shall give an audible signal before attempting to overtake and pass a pedestrian or other bicycle." Palatine Code of Ordinances § 18-143(i). Thus, Johnson was clearly permitted to ride his bicycle on the subject sidewalk.

¶ 38    Chapter 16 of the Village's Code of Ordinances addresses construction and maintenance of facilities in the public rights-of-way. Section 16-1 states, "[t]he purpose of this Chapter is to establish policies and procedures for constructing and/or maintaining facilities on rights-of-way within the Village's jurisdiction, which will provide public benefit consistent with *** safe usage." Palatine Code of Ordinances § 16-1(a) (eff. Mar. 16, 2015). Chapter 16 applies to all facilities for which "the Village has authority or maintenance responsibility." Palatine Code of Ordinances § 16-1(b) (eff. Mar. 16, 2015). Under section 16-2, the Village defines "sidewalk." The ordinance states:

> " '*Sidewalk*' – Shall mean that portion of the street right of way between the curb lines or the lateral lines of a roadway, and the adjacent property lines *intended for the use of pedestrians* and generally separated from the curb or roadway surface by a parkway or

grass plot." (Term emphasis in original; content emphasis added.) Palatine Code of Ordinances § 16-2 (eff. Mar. 16, 2015).

¶ 39    Here, Johnson has not established that he, as a bicyclist, was an intended user of the subject sidewalk on Quentin Road. Specifically, Johnson has not shown that the sidewalk included any affirmative manifestations such as signs, pavement markings, or other physical manifestations establishing that the Village intended that the sidewalk be used by bicyclists. See *Alave*, 2023 IL 128602, ¶ 56. The record includes numerous photographs of the sidewalk taken from various distances and angles. Several of the photographs depict a substantial length of the sidewalk running parallel with Quentin Road. All the photographs show that it is a plain, unmarked sidewalk with no visible signage indicating that it is intended to be used by bicyclists. Thus, the nature of the property provides no indication that Johnson, while riding his bicycle, was an intended user of the sidewalk. *Alave*, 2023 IL 128602, ¶ 40.

¶ 40    Other evidence in the record also supports the circuit court's finding that Johnson was not an intended user of the sidewalk. Four of the Village's employees who gave depositions all testified that, although Johnson and other bicyclists were permitted to ride on the sidewalks, pedestrians were the intended users of the sidewalks. Ottesen, McCullar, and Grabowski further testified that the Village had an extensive bike path system and that bicyclists were the intended users of that system. In addition, a document listing annual expenditures for the Village's sidewalk replacement program expressly stated as a justification for the program, "[t]his program will reduce lawsuits which result from pedestrians injuring themselves due to deteriorated sidewalks." The document made no mention of bicyclists as intended users of the sidewalks.

¶ 41    Moreover, the Village's ordinance defining "sidewalk" expressly states that sidewalks are "intended for the use of pedestrians." Although the Village's traffic ordinances clearly provide that bicyclists are permitted to ride on sidewalks unless prohibited by posted signs, such as in business districts, the traffic ordinances do not indicate that bicyclists are intended users of the sidewalks. Instead, the traffic ordinances ensure that bicyclists will obey traffic laws while riding on the Village's sidewalks and streets. See *Alave*, 2023 IL 128602, ¶ 70.

¶ 42    The record is devoid of any evidence that bicyclist Johnson was an intended user of the subject sidewalk. Johnson therefore failed to meet his burden of proving that the Village owed him a duty. *Alave*, 2023 IL 128602, ¶ 37. Accordingly, the circuit court's entry of summary judgment in favor of the Village was proper. See 735 ILCS 5/2-1005(c) (West 2020).

¶ 43    In reaching this conclusion, we find no merit in Johnson's argument that he was an intended user of the sidewalk because his only other option was to ride his bicycle on the dangerous road, thus making it an issue of necessity. The issue here is not whether the busy road rendered it necessary for Johnson to ride his bicycle on the sidewalk but whether the Village intended for bicyclists to use the subject sidewalk. See *Alave*, 2023 IL 128602, ¶ 88. It is the intent of the municipality that is controlling, not the intent of the user. *Boub*, 183 Ill. 2d at 525. Although Johnson was permitted to ride on the sidewalk to avoid riding in the street, the Village did not intend for bicyclists to ride on the subject sidewalk.

¶ 44    In addition, we find that Johnson's argument that the language of section 3-102(a) applies to "people" who are "intended and permitted" to use the property rather than the municipality's intended and permitted "uses" of the property is contradicted by the plethora of precedent from the supreme court and this court interpreting the statute. All the case law addresses intended and

permitted *uses* of the property. See, *e.g.*, *Alave*, 2023 IL 128602, §§ 39-40. Johnson's claim that he was an intended user of the subject public sidewalk because he was a resident of the Village is unsupported.

¶ 45    Finally, based on our conclusion that the Village did not owe a duty to Johnson, we need not address the issue of whether the condition of the sidewalk was open and obvious.

¶ 46    For these reasons, we affirm the order of the circuit court of Cook County granting summary judgment in favor of the Village of Palatine.

¶ 47    Affirmed.